In the
# United States District Court
For the
Western District of Wisconsin

Kelly Maday,

Plaintiff,

v. Case No. 26-803

Ashland School District Board of Education, and
Ashland School District,

Defendants.

# COMPLAINT

## I. NATURE OF ACTION

101. This is a civil rights action arising out unlawful retaliation against the Plaintiff for things she said during the course of her participation in a March 20, 2024, meeting of the Defendants' Board of Education, in violation of the Plaintiff's rights to freedom of speech secured by the First Amendment to the Constitution of the United States.

## II. JURISDICTION AND VENUE

201. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).

202. The Western District of Wisconsin is the proper venue for this action because the Plaintiff's claims arose within the geographical boundaries of the Western District of Wisconsin within the meaning of 28 U.S.C. § 1391(b).

## III. PARTIES

### A. Plaintiff

301. The Plaintiff Kelly Maday is a resident of the State of Wisconsin with the capacity to sue and be sued in this Court. During the years at issue in this case, 2023-2025, she was an elected member of the Ashland School District Board of Education.

### B. Defendants

302. Defendant Ashland School District Board of Education (sometimes, "School Board") is a Wisconsin political entity with the capacity to sue and be sued in this Court.[1]

---

[1] "In *Flood v. Board of Education* (1975), 69 Wis.2d 184, 230 N.W.2d 711, this court held that a board of education of a joint school district had the capacity to sue and be sued in spite of the fact that there was no express authorization therefor in the statutes.[1]

---

[1]Also see *Joint Sch. Dist. No. 1, City of Wisconsin Rapids v. Wisconsin Rapids Educ. Ass'n,* 70 Wis. 2d 292, 234 N.W.2d 289 (1975)." *Racine Fire & Police Comm'n v. Stanfield*, 70 Wis. 2d 395, 400, 234 N.W.2d 307, 310 (1975)

303. Defendant Ashland School District is a Wisconsin political entity with the capacity to sue and be sued in this Court.

## IV. ALLEGATIONS OF FACT AS TO ALL CAUSES OF ACTION

401. In the spring of 2023, Plaintiff Kelly Maday was elected to a seat on the Ashland School District Board of Education.

402. The Ashland School District Board of Education governs the affairs of the Ashland School District and is the final policymaking body for the Ashland School District.

403. The Ashland School District owns, operates, and maintains athletic and weightlifting facilities (hereinafter, the "school athletic facilities").

404. Ashland School District policy states that school athletic facilities are closed to students over holiday breaks and outside of intended operating hours.

405. The Ashland School District requires all authorized users of school athletic facilities to log their usage by recording the date, time, name, and the user's charging entity.

406. During Thanksgiving and Christmas breaks of 2023, Ms. Maday personally observed multiple individuals, including alumni, using the track and lifting weights at the school athletic facilities.

407. Following these observations, Ms. Maday reported her concerns regarding unauthorized facility usage to Ashland School District Superintendent, Rob Prater.

408. Mr. Prater advised Ms. Maday that school employees possess unrestricted access to school athletic facilities and are permitted to bring guests whenever they choose.

409. Ms. Maday subsequently requested that her concerns regarding facility access be placed on an official committee meeting or School Board agenda. Prater denied Ms. Maday's request to have the issue placed on an agenda for public or committee consideration.

410. A few months later, multiple School District staff members approached Ms. Maday at a basketball game and shared the same concerns regarding the improper usage of school athletic facilities.

411. Following this conversation, Ms. Maday determined it was her duty as a Board of Education member and thus, a community representative, to understand the facility access procedures.

412. Ms. Maday contacted the school district Superintendent Rob Prater, Board of Education President Jeff Moravchik, and Business Manager Amanda Tutor, to attempt to learn which specific persons or groups were using the school athletic facilities and the amounts of revenue generated by such use. Ms. Maday requested information detailing where specific facility revenues and associated financial bills were tracked within the School District's budget.

413. In response, Ms. Tutor stated that rental revenue was categorized under "miscellaneous revenue" and provided Ms. Maday with the Ashland school athletic facilities rental spreadsheet for the 2023-2024 school year.

414. The spreadsheet provided lacked some details, leading Ms. Maday to request a breakdown specifying the exact dates, hours, and specific persons or entities that had used the facilities, and the amounts paid for each instance of facility usage.

415. Mr. Prater responded to this request by stating that the facility usage report with these small details would not be produced until the end of the fiscal year, at which time, sometime between June 15 and July 3, 2024, it would be available. Mr. Prater and Mr. Moravchik told Ms. Maday that if she wished to receive the detailed report, she would be required to pursue the request through official Board action. Ms. Maday was told that, before requesting Board action, she would have to attend an in-person meeting with Mr. Prater and Mr. Mr. Moravchik.

416. On March 11, 2024, Ms. Maday attended a meeting with Mr. Prater and Mr. Moravchik to discuss her ongoing facility usage concerns.

417. During the meeting, Mr. Prater and Mr. Moravchik informed Ms. Maday that her inquiries and information gathering constituted an unauthorized investigation into facility usage, which violated School District policy.

418. Ms. Maday clarified that she was not conducting an investigation or reporting the information back to anyone in authority. The request for the report was simply to fulfill her obligations to be an informed Board member and to answer public questions.

419. After the meeting on March 11, Mr. Prater drafted an executive summary for the March 20, 2024, School Board meeting agenda. In his official executive

summary, Mr. Prater claimed that Ms. Maday had sent him fifty-five separate emails requesting information.

420. In his official executive summary, Mr. Prater also stated that the School District's attorney had been consulted by his administration regarding Ms. Maday's records requests and facility inquiries.

421. Ms. Maday was expected to email Mr. Prater with any questions and when, as a Board member, she got weekly Board updates, and Board agendas.

422. After reviewing her emails, Ms. Maday found that she had only sent Mr. Prater a total of fifteen emails outside of weekly board updates and agenda questions.

423. The next School Board meeting was held on March 20, 2024. During this meeting, Mr. Prater publicly stated that Ms. Maday's information requests were a financial and administrative burden on the School District.

424. Ms. Maday used the School Board meeting on March 20 to, among other things, detail her attempts to obtain the facility usage records, and she requested support from her fellow Board members in her efforts.

425. All of Ms. Maday's speech at the March 20, 2024, meeting of the Board of Education was clearly within the protection of the First Amendment.

426. In April, 2024, Ms. Maday was notified that an unidentified, school district staff member had filed a formal complaint against her.

427. She was not given a copy of the complaint.

428. Mr. Moravchik and the School District's attorney initiated an official investigation into the complaint, retaining an outside law firm based in Eau Claire, Wisconsin, to do so.

429. The outside law firm concluded its investigation on June 7, 2024, and presented its findings during a closed session of the School Board meeting. The full written findings were not given to the Board members, but portions of the report were read aloud by the attorney at one or more closed sessions of Board of Education meetings from which Ms. Maday was excluded.

430. At a later Board meeting held on either July 15, 2024, or July 29, 2024, the School Board voted in a closed session on whether or not to officially censure Ms. Maday based on the investigatory findings.

431. Prior to the vote, Ms. Maday was asked to exit the meeting room so the Board could talk about her in private, and she was only called back into the meeting when the Board was ready to take action.

432. Upon her return to the meeting, Ms. Maday was informed of her official censure and that the School District's attorney would be drafting formal censure documents.

433. Ms. Maday requested an opportunity to speak on her own behalf regarding the allegations prior to the finalization of the censure. Her request was denied.

434. The final decision was the censure of Ms. Maday with removal from all her committee assignments for a period of time.

435. The censure and removal of committee assignments were motivated solely by Ms. Maday's speech at the March 20, 2024, meeting of the Board of Education; part of the censure notice read:

> Board Member Maday exceeded her role and authority as a School Board member by her behavior and comments made at the March 20, 2024 School Board meeting.

436. The censure was more than just a formal expression of disapproval. It entailed Maday's removal from her Board of Education committee assignments. Part of the notice of censure read:

> Board Member Maday is hereby removed from Board committee assignment(s) for the remainder of the year and until the following organizational meeting of the Board, at which time the President is authorized to either restore her committee assignment(s) or continue to withhold the committee assignment(s).

437. This was a significant and serious adverse action that prevented Ms. Maday from carrying out many of her plans for public service that had led her to run for a seat on the School board in the first place.

438. Following the censure, Ms. Maday submitted a formal request under the Wisconsin Open Records Law for the initial complaint, the final investigatory report, and all supporting documentation. Her request was denied, instead she received unrelated email correspondence between a local dance studio and staff.

439. Following public disclosure of the Board's decision to censure Ms. Maday, a woman named Kate Ullman, submitted a Wisconsin Open Records Act request for the underlying investigatory report. Her request was denied; Ms. Ullman

obtained legal counsel and initiated a public records lawsuit against the Ashland School District.

440. In 2025, Ms. Maday's one-year censure expired, making her legally eligible to return to School Board committee meetings.

441. The published agenda for the April, 2025, School Board meeting featured an item titled "complaint against a board member."

442. When the closed session of the meeting started, Ms. Maday learned that the same staff member who filed the April, 2024, complaint had filed a second formal complaint against her.

443. The School District processed this second complaint in a similar manner to the first, hiring a neutral third-party investigator and summarily denying Ms. Maday's open records requests for the complaint text.

444. The result of this second investigation was a finding of no violations on Ms. Maday's part.

## V. BASIS OF LIABILITY

### A. First Amendment.

501. The Defendants, School District of Ashland and School District of Ashland Board of Education, violated rights secured to Kelly Maday by the First Amendment to the Constitution of the United States when they censured her in retaliation for her speech at the March 20, 2024, meeting of the Board of Education.

## VI. DAMAGES.

### A. Compensatory Damages.

601. By virtue of the unlawful actions of the Defendants alleged above, Plaintiff Kelly Maday suffered emotional distress, injury to her personal reputation, and other injuries, for which she seeks an award of compensatory damages in an amount deemed just by the Court.

## VII. CONDITIONS PRECEDENT

701. All conditions precedent to his action within the meaning of Rule 9(c), Fed. R. Civ. Pro., have been performed or have otherwise occurred.

## VIII. PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays the Court to grant a judgement against the Defendants awarding her damages, costs, attorney's fees and such other and further relief as the Court deems just.

Dated this Monday, August 31, 2026.

Respectfully submitted,

Kelly Maday

Plaintiff,

By

THE JEFF SCOTT OLSON LAW FIRM, S.C.

JEFF SCOTT OLSON
State Bar Number 1016284
1025 Quinn Drive, Suite 500
Waunakee, WI 53597-2502
Phone: 608 283-6001
Fax: 608 283 0945
E-mail: jsolson@scofflaw.com

/s/ Jeff Scott Olson

____________________________

Jeff Scott Olson

ATTORNEYS FOR PLAINTIFF